Good morning. Phyllis Glaser on behalf of the defendant's appellant, the Louisiana Attorney General Liz Murrill, Colonel Robert Hodges, the Superintendent of Louisiana State Police, Chris Eskew, the Deputy Superintendent of Louisiana State Police, and James LeBlanc, the well-known Secretary of the Department of Public Safety and Corrections, all of whom are sued only in their official capacities in this case at this point. The plaintiff, Kendra Greenwald, is a registered sex offender who filed suit claiming a substantive due process violation. She had other claims that have since been dismissed or are being considered at the district court level. Ms. Greenwald's substantive due process claim is originally pled was that she has a disability which prevents her from complying with the sex offender registration and notification requirements under Louisiana law, and that because she's incapable of complying with them, she has a fundamental liberty interest to not be arrested for violating them, even though she admits that it is a felony to violate them. That claim is heck-barred because Ms. Greenwald was convicted of failing to register, and at the time of her conviction, she claims she was disabled and as a result of her disability, incapable of complying. It is a direct implication to the invalidity of her conviction based on the operative facts of her current 14th Amendment claim as compared to her conviction. It seems like her complaint is with regard to compliance with a condition following her conviction. What's the best case that we can look at to make that fall within the heck umbrella of claims that are barred? Well, she, so she changed her claim a little bit in response to the heck, so the facts, the operative facts of the complaint. And she still admits that she is a sex offender. That's never been put at issue in the proceedings. She just feels as though she cannot comply based on her whatever disability. So why is that heck-barred? What's the best case, again, that makes that fall under heck? Well, heck, it's, I mean, all of the heck cases, I mean, it's a, let's see, you've got the line of cases, recent cases involving excessive force cases, so Oakland and those types of cases where you look at the fact, the operative facts of the 1980, the current 1983 claim before you, compare them to the crime she was convicted of. So she, according to the complaint, she was convicted of failing to register. She had her probation, first she had her probation revoked for failing to register, but she also was convicted, subsequently convicted on a new charge of failing to register. According to paragraph 67 of her original petition, page 25 of the record, she began having difficulty with complying with SORNA almost immediately after becoming subject to it. Thus, she has admitted in her complaint that based on her disability and the resulting limitations, she was incapable of complying with the registration and notification requirements from the get-go. So if you find that she has a right now because she's incapable of complying, a fundamental right to not be arrested, it's going to imply the invalidity of her prior convictions for failing to register because she was allegedly disabled then. It is a, I mean, the fact, the operative facts are the same. Even though she claims her condition has gotten worse, the thing she was unable to do originally, she is still unable to do. And so in response to Heck, she changed the claim and said that the current claim doesn't imply the invalidity of her convictions because the current claim arises from a finding by one of the judges at Orleans Criminal Court that she is permanently and unrestorably incompetent to stand trial. But as the district court found, her competence to stand trial is not relevant to her compliance with SORNA. It's about her ability to stand trial for any crime. So you referred to the original complaint and now an amended complaint, but what are we hearing in this appeal? Only the original complaint. Is that a problem for this appeal? It is not. It is not because the substantive due process claim, which is the only one before you right now, was not amended by the amended complaint. And so the judge's ruling on the original complaint stands even though he fought, even though she filed an amended complaint afterwards. We're talking about an appeal from a complaint that is no longer in existence. Correct. But the court's ruling is fixed. And so even if we filed an appeal... It may sound like a very technical question, but we've dismissed appeals based on these technical defects before. Correct. But you've also found that if a... A dozat is one of the cases that comes to mind, was an Eighth Amendment medical indifference claim, where if the operative facts are the same in the original complaint and then subsequently and you don't appeal the ruling based on the original set of facts, then you've waived it. You're stuck with the court's ruling. So what we have right now is a... Which case is that? It's called dozat. D-A-U-Z-A-T. I don't have the citation in front of me, but that's just one that comes to mind. And so we've got a ruling based on the facts as pleaded in the original complaint that the complaint states a cause of action for a substantive due process violation that none of the named defendants are entitled to sovereign immunity from. It overcomes HECC. It overcomes sovereign immunity, the ex parte young. And then on a different claim, plaintiff was granted leave to amend, a procedural due process claim. And so the amended complaint doesn't touch the substantive due process claim at all. You're saying in that case, the NOA was based on the original, no longer existent complaint. It was... But our court still heard the appeal? Actually, in that case, it was... There was an appeal from the... It was a 12B-6 and that was, let's see, it was a qualified immunity case. 12B-6 was appealed and the denial of qualified immunity was affirmed and MSJ was filed and the court found it's the same set of facts on the MSJ as was in the complaint. So same, that was the holding on the second appeal. You're saying that appeal was premised on the original complaint, not the new complaint? The facts as alleged in the original complaint that were subsequently proven on summary judgment, yeah, essentially. And so it was the same set of facts both times and thus the court said, it's the same. The result is the same. And so to avoid that, and we checked too, and there's an email confirmation in the record to make sure that the substantive due process claim wasn't touched in the amendment. And so we have this ruling here. Now, if you were going to say that we couldn't appeal because there was an amendment or that the appeal was rendered moot by the amendment, the timing is a little, I'm not 100% sure, but that, within your purview, if that is what you think should happen, but we would ask that you say that so that the defendants can come back and re-urge this later because this collateral order appeal is... The state's assertion of rights in any way, shape, or form. This is a technical problem, but sometimes lawyers get technical. The case I'm thinking of is New Orleans Association of Cemetery Tour Guides, 56F 4th 1026. So if you all think that that case is somehow distinguishable, obviously welcome 28J. Okay. I would certainly... This is a technical problem that will not prejudice either side's rights to vindicate any arguments they want to appeal. It's just we have to have a valid appeal before we can hear it. Sure. Of course. Jurisdiction was a big issue here and the procedural intricacies of this case have been unusual at times as well. So I get it. So, but assuming that we're here on a valid appeal, the amendment doesn't actually touch this, so, touch this claim. But so now the claim, now the substantive due process claim pertains to this finding of unrestorable incompetence. Now Ms. Greenwald was arrested only one time after being declared an unrestorable incompetent. The language used in the complaint's a little vague about that, but it's been clarified. It's unequivocal in the briefing. She was arrested only one time after being declared an unrestorable incompetent, some four years before suit was filed, and that was about seven years ago, as of June or July, but it'll be seven years. And so that claim, to the extent that it's based on unrestorable incompetence, that does not meet the ex parte Young exception, excuse me, as to any of the defendants. For one, there's no ongoing constitutional violation. She was arrested one time after being declared an unrestorable incompetent and not by any of the defendants, not the state defendants or the city. She according to the complaint, I think was arrested by Jefferson Parish, which is not even a party to the suit, and only the one time. So there's no allegation of an ongoing issue here with her being arrested after being declared an unrestorable incompetent one time. Then there's the defendants. So she was not arrested by the state ever, according to the complaint. And so the allegations of this connection, this ex parte Young connection between the named state officials and the Act. According to the original complaint, the connection has to do with their respective involvement in enforcement and the administration of the sex offender registry and the registration requirements. But if the claim is about the finding of unrestorable incompetence, then the connection of the defendants of the state to enforcement of SORNA is irrelevant, because if she's incompetent to stand trial, she's incompetent to stand trial on any claim. And if the fundamental right, the substantive due process right, is the right to not be arrested at all because she is incapable of standing trial, then the most you have here is a group of state officials who have a general duty to enforce criminal law and that is not enough to connect them to the enforcement of the Act for purposes of ex parte Young. In addition, as Ms. Greenwald has said several times in this case, she's not actually challenging the constitutionality of SORNA in the way that one normally challenges the constitutionality of an Act. She's challenging her arrests. Now her arrests for violating SORNA happen to be about violating SORNA, but as we know, as has been admitted, she's been arrested for other things, including a sex offense. So again, the defense, so you don't have that ongoing constitutional violation or the connection with the defendants to meet ex parte Young. And then there's the question of the injunction. The injunction that is requested is an injunction, which— Do we still have the injunction at issue here? I understand in the district court, maybe your opponent can address this, but my understanding was that the plaintiff no longer seeks injunctive relief. Oh, no, I think they're only seeking injunctive relief still. And it's an injunction still to prevent her from being arrested. And I believe they added an ADA claim, and so I think that there's an injunction for accommodations that—it can't be against the state because they don't do what they're asking for, but I think against the city. And on that note, part of what the defendants had moved for originally was a more definite statement. It was very, very clearly raised in the motion. So it was a 12B1, 6, and E. And the district court didn't rule on it at all, and now it was rendered moot effectively by denying the motion as to this claim. But the issue of the more definite statement is really significant here because even though there has already been an amendment, there wasn't one on the substantive due process claim, which was the basis for the motion for more definite statement. The claim is so vague and, as we've seen, is now fluid and changes depending on what argument they're responding to. And a more definite statement would be appropriate here because that threshold question of what legal standard is going to govern analysis of these claims is the threshold question. It's one that has to be answered in every 1983 case as the first question because otherwise you can't inquire as to whether there's an ongoing violation without knowing what the violation is or how the defendants are connected to it or any of those things if you don't know what constitutional right is at issue and what legal standard governs the claim here. So Ms. Greenwald is alleging an unconstitutional arrest, and that is a Fourth Amendment issue. And not a Fourteenth. So, that's it. Thanks. Thank you. You've saved five minutes for rebuttal. Mr. Edmonds. Good morning, Your Honors. May it please the Court. Chris Edmonds on behalf of Kendra Greenwald. With me at counsel's table is Dalton Corson from Disability Rights, Louisiana. Judge Ho, I want to first address the jurisdictional issue that you raised because frankly I had not even considered it until you raised it this morning about the original complaint and the amended complaint. We did amend our complaint. The original complaint, the only claim that survived was a claim for injunctive relief against the state of Louisiana for a violation of substantive due process. Subsequently, we amended and there was motions to dismiss filed and Judge Malazzo has denied the motions and it's basically the ADA claims are going forward. And so those, I hadn't put a whole lot of thought into this issue, but I do, I am familiar with the case law that says that once you file an amended complaint, it supersedes the original complaint and the original complaint is basically of no legal effect anymore. So obviously this Court has an obligation to consider jurisdiction sua sponte. We will happily submit a 28-J letter on that issue. My friend on the other side spent the better part of her argument talking about the Fourth Amendment. But there's that, she's trying to argue the merits of the substantive due process claim. Under Ex parte Young and Verizon, the Supreme Court's Verizon decision, that you cannot get this, there's a threshold analysis is, is, is the term that they use. And that threshold analysis does not include any examination of the merits of the claim. You literally, it's literally, you look at the piece of paper and you say, are they alleging a violation of federal law? Yes or no. You don't get into a 12B6 type analysis. It's this very superficial level of analysis. And to give you an example. I take it that's what the state is saying is all you need is a superficial analysis to know that this fits within the Fourth Amendment, the more specific enumeration of the Fourth Amendment over the substantive due process. No, that's, so that is, that's, that's not what they're saying. What they're saying is. It's only one of their theories, I think, isn't it? They may have other arguments, but isn't that one of them? No. Their, their argument is that under Ex parte Young and Verizon and all of that progeny, that this Court has the authority to engage in more than a threshold analysis and can actually look, well, what is the, the constitutional right at issue? You say it's substantive due process, but that's really Fourth Amendment. That is way, way beyond Ex parte Young territory. Ex parte Young is, is, are you alleging. If you're agreeing that's their argument, you just don't think it's allowed under. Yes. Yes. Maybe, maybe. Sorry. Maybe we're ships passing in the night here, Judge. I, I. That is their argument. You're saying that is not superficial enough to, to do it this way. Right. Correct. Thank you. Yes. All right. And I would say more importantly, they never raised this argument in the district court. And we, we, in our, in our appellee brief, we say, I'm sorry, where was this Fourth Amendment argument in your motion to dismiss briefing? And in their reply brief on appeal, they say, oh yeah, we raised this argument. Look at page 233 of the record. We raised it. So I went and I looked at page 233 of the record. That's their reply brief, your honors. They raised the, this Fourth Amendment argument for the first time in their reply brief in support of the motion to dismiss. It is very well established that you cannot raise issues for the first time in a reply brief. Is there an argument below or was just on the papers? It was just on the paper. You mean, you mean an oral argument? You're right. No. In other words, you didn't have a chance to engage. Correct. No. Judge Malazzo did not hold any oral argument. So we had no opportunity. You're saying it wasn't preserved below. Correct. They did not preserve this issue. And that's why we didn't address it. If you end up going back because this appeal is moot, then you can have fun down there. Sure. That's right. And they, they can, they will take up that issue of whether or not. I assume they'll raise it next time. Right. All right. I'll turn to Heck if there's no further questions about that. Well, actually, I will just, just briefly address the merits of, of the Fourth Amendment issue. We may also have a Fourth Amendment claim, but they don't dispute, they don't explain why we also don't have a substantive due process claim. And they concede that being physically arrested and jailed is, implicates a liberty interest. They may have, they may just, and, and in fairness. Maybe I'm missing something here, but I'm trying to get a picture of how this is going to work. Assuming you're successful, you get an injunction, you know, PD, it covers them, it covers JPSO. Does your client carry the paper in, the written paper in her back pocket and show it when she's arrested or does she have it, you know, a thing pinned to her shirt when she goes out where the police know, well, here comes, here comes Ms. Greenwald and don't mess with her. How does she offer up some immunity? It sounds like she wants immunity from being arrested for not complying with SORNA. I understand that's the goal, but as a practical matter, I just don't know how this could be implicated. Why is she not, why does she not avail herself of the lack of mental capacity? Granted, it's no fun to be arrested, but if she would have the claim that she doesn't have the mental capacity, just as has happened in the past. Well, the problem with what you're suggesting is that for her to raise that claim, she has to first be arrested. And so she's in this vicious cycle where she only gets to raise the issue of her mental capacity after she's been arrested, after she's been jailed. So tell me how, how does she, does she have it, you know, stenciled on her forehead? No. How do we know not to arrest her? I understand the question. Yeah. I don't, I don't want to spend too much time on this because now we really are getting into the merits of the claim in terms of how you would frame and how you would craft the injunctive relief. And it's a very fair question, Judge, because this is a very unusual case. I don't think this is something that happens every day. It is. Okay. Most criminal laws tell you not to do something. Don't kill. Don't, don't steal. Don't rape. This is a law that affirmatively requires you to affirmatively do something and not just simple things, very complicated arcane tasks that would be difficult for myself or the judges on the bench, frankly. So it's an unusual situation, but that is a question for the district court. And that is a question that when we get to the injunctive relief phase, and of course it is not right because now we have an Americans with Disabilities Act claim, which actually puts an affirmative obligation on state entities to accommodate people with disabilities, including in the criminal justice context. So, I'd like to move to the HEC, because I know my time is running short. HEC only applies to convictions. We are not, nothing in our complaint challenges any prior convictions. We're not challenging her initial conviction for SORNA. We fully conceive that Ms. Greenwald is subject to SORNA. We are just saying that she needs help complying. The Orleans Parish Public Defenders were helping her for a while. They cut her loose. They said, we can't do this anymore. Myself and Mr. Greenwald have been helping her. That's not our job, right? And so maybe they have an argument below. Maybe they'll convince the judge or the jury below that, no, that's really, there's not a claim here after we get some discovery. But we're not challenging her conviction, nor are we challenging her one failure to register conviction in 2014. We are seeking injunctive relief moving forward. And in fact, the best evidence that we're not seeking a HEC claim is the language of HEC itself, right? Because HEC says, and this is at page 487, when a state prisoner seeks damages in a 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction. Damages, right? We are not seeking damages. We are only seeking injunctive relief. That is a very strong clue that nothing about the relief that we get will imply the validity of anything. Not against the state defendants? Is that? I'm sorry. I'm still... No one. So we initially... I don't know where we are on the injunctive relief. That's why I... So, yes. Our claims, we no longer have any pending claims for damages. All of our claims are, the only pending claims are claims for injunctive relief against the city and against the state defendants. And of course, this kind of gets into this, SORNA is a very, you know, the obligations under SORNA, the governmental obligations, are very diffuse, right? It's not just one agency. But don't we have case law that says that injunctive relief on this type of claim would not apply if the state is not specifically enforcing it against... Well, yes. We do.  Let me, can I... General obligation to uphold the law... Sure. Can I... Can I turn... Can I answer your question? Do whatever you want in your time. Yeah. I'm just... Yeah, yeah. I'm going to... ...quite honest. Absolutely. Yes, Judge. I'm going to get to that. Pardon me, please. Yeah, sure. Let me get through my heck argument and then I will turn right to your... That's more of the ex parte young argument and the Paxton, Austin v. Paxton case that we cite. So, you know, that's... The first issue is that we don't, you know, we're not challenging her convictions. We're challenging her arrests without convictions. She keeps getting arrested and not getting convicted because she is, it, been deemed irrestorably incompetent to stand trial and no one seems to dispute. And when we get into discovery, no one is going to be able to dispute that Ms. Greenwald, because of her very severe functional limitations, is not able to comply with this Byzantine requirements under SORNA. So heck does not apply. The second thing I will say is this court does not have the jurisdiction to consider heck issues. Now, I know that there's the Poole case, right? And basically, in Poole, I think it was Judge Costa who went back and looked at the case law and he said, this is a mess. We've said multiple times in unpublished opinions that heck issues are not immediately appealable and other... So that's the prevailing view in other circuits and that, of course, makes perfect sense because there's no reason that a heck determination cannot be fully adjudicated on appeal after a final judgment. Right? But they said, we've got this case, Sappington, and it's a published opinion, even though there's not really any reasoning explaining why heck issues should be appealable. And so under the rule of orderliness, we're bound to follow it. However, both Poole and Sappington are easily distinguishable because both cases arose in the context of qualified immunity against individual officers seeking money damages. And we are not seeking... We're not suing anyone in their personal capacity seeking damages. We're only seeking injunctive relief against officers in their official capacities. And that matters because qualified immunity is immediately appealable because if you are forced to respond to discovery requests and appear at hearings and trial, well, that eviscerates qualified immunity, right? And so I think the court in those... All right. We're already here deciding qualified immunity. We're going to address heck. So I think the way that you can limit the scope of Sappington and Poole is to say that really only applies in the context of appeals from the denial of qualified immunity. And to the extent that you don't do that, we of course preserve that issue for en bloc review because we do believe that the Poole and Sappington line of cases is wrongly decided. That said, you know, I'm going to talk a little bit more about heck because... Oh, before I do, Judge Oldham's dissent in Crittington v. LeBlanc, which we cite, he talks about this, right, because they did... The panel did not consider heck, the heck issue, because it was not briefed on appeal. But he goes through all these cases and he says, we have considered heck issues, quote, in this posture. And this is... He says, yes, our court attempted to cure this conflict by stating that heck issues are reviewable on interlocutory appeal from a denial of qualified immunity. So I know that that's a dissent. It's not binding. But I think it is instructive, Judge Oldham's basically saying that heck issues are immediately appealable when they come up to this court from the denial of qualified immunity. But even if you do have jurisdiction to consider heck issues in this posture, all you need to do is look at Poole and Sappington, and you can clearly see that this doesn't apply. So in Poole, for example, the court said that heck is no barrier because the excessive force claim was temporally and conceptually distinct from the flight offense, right? It implied that the officer did not use excessive force. There's nothing about finding that Ms. Greenwald's rights are being violated in some way now going forward for prospective release. Nothing about that would invalidate her prior convictions in the past. So with that, I will turn, Your Honor, to your questions about ex parte, the young, and the connection. So first and foremost, this case law, it's a little bit funky, but you really only need to have a scintilla of enforcement. And the Austin, the Paxton case says, and I quote, the text of the challenge law need not actually state the official's duty to enforce it, although such a statement may make that duty clearer. Well, the text of the statute here could not be any more clear. The Attorney General and the other State defendants have a very clearly and extensively articulated duty under the statute. Now, we also have to show a demonstrated willingness to enforce that, and we have done so. We have alleged that on numerous occasions, the Attorney General has not only issued opinions on the scope of SORNA, but has in fact gotten directly involved, used the very unusual authority of saying, we're going to actually directly prosecute and take over this prosecution. In addition to that, it's not disputed that the SPAT, the Sexual Predator Apprehension Team, is very actively involved in enforcing SORNA. I don't understand how they can deny that. And of course, they don't deny that. What they now have done is tried to change their argument and say, there's no evidence that Ms. Green, excuse me, there's no evidence that SPAT was involved in Ms. Greenwald's arrest. Well, that is not what Ex Parte Young requires, and that would turn Ex Parte Young into dead letter because Ex Parte Young is about perspective relief. They're arguing about things that happened in the past, right? So the fact, that's the first thing, right? That doesn't, excuse me, I'm having a brain freeze. That's not the scope, right? The scope of Ex Parte Young is whether or not you have a duty and a demonstrated willingness to exercise that duty. You don't get into looking at individual plaintiffs. If that were the case, almost no one would be able to sue under Ex Parte Young because you would have to show that this individual, if I want to challenge the FDA or something on a new drug regulation, I would have to show that the FDA actually enforced something against me in the past, right? So the second thing is that they didn't raise this issue in the district court. This argument about we have to, we, the attorney general's office and these other state defendants have to have actually interacted with you, nowhere in their briefing in the district court. The third thing, the third thing is that we have no way of knowing that at question. They may well have been involved in Ms. Greenwald's arrest. We don't know because there's all sorts of ways that the attorney general can be involved in enforcing SORNA, including identifying people without physically carrying out the arrests. So if this court is inclined to accept the argument that we have to show some personal connection between attorney general, former attorney general Landry and my client, then we're entitled to discovery, some very narrow jurisdictional discovery on that question. But of course, that is not the law under Ex Parte Young and it was waived. So you don't have to reach that issue. The other state defendants did not raise this sovereign immunity issue. They raised the same argument, right, that, oh, we were not physically involved. They don't dispute that they have a duty and a demonstrated willingness to exercise that duty under Ex Parte Young. They simply say, well, we weren't personally involved. You don't allege that we were personally involved. Again, they didn't raise sovereign immunity at all in the district court. And what this court has done, this court does have the discretion to consider sovereign immunity arguments for the first time on appeal, but this court's general practice is to send those issues back to the district court to pass on the issue in the first instance because it's really not fair. It's gamesmanship. You try to challenge the claim on the merits and then you lose and then you appeal and you say, oh, I'm going to raise sovereign immunity. That's just not fair. That's not a fair way to litigate cases. And so that's, unless there's some really pressing reason, like if we were really threatening the coffers of the state of Louisiana or something, that's the type of issue that should be sent to the district court to consider in the first instance. I have about a minute left, but I don't believe I have anything further, so if the Court doesn't have any questions, I thank you for the Court's time. Thank you. Mr. — I'm sorry, Ms. Glazer, you have five minutes reserved. While the plaintiff has conceded she's not entitled to money damages against the state officials in their official capacity, her well-established Supreme Court precedent, she's nonetheless trying to hamstring the state of Louisiana into not arresting a sex offender for violating state criminal law. That is an injunction that seriously implies the — implicates federalism principles and the sovereignty of the state of Louisiana. The issue of sovereign immunity was undeniably raised by every single state defendant, and it was unquestionably denied as to every single state defendant under Ex parte Young. That's in the district court's opinion. So that issue was not waived. This isn't — there's no gamesmanship here. What we have is an arguably indefensibly vague complaint, where the complaint keeps changing. So there's a comment about the Fourth Amendment issue not being raised until the reply and the motion to dismiss stage. This was a 12E. There was a 12E motion for a more definite statement, part of the motion to dismiss, and specifically on the substantive due process claim, which was then changed a little, clarified a little bit in opposition to the motion to dismiss, which then prompted a reply. The motion to dismiss just so happened to have been filed twice, fully briefed twice, and considered — well, it was under advisement in the Middle District when the case was transferred to the Eastern District. There was plenty of opportunity, notice to the plaintiff and an opportunity to respond to that argument. There just hasn't been one yet. The — let's see — the connection to the individual plaintiff. Nobody is saying that Jeff Landry or Liz Murrell needed to be involved personally in anybody's arrest. That's not — nobody's ever said that. But the attorney general's office has not been involved in any of Ms. Greenwald's arrests, nor has state police or the Department of Corrections. And there's no issue with her appearance on the website. So why the deputy superintendent is sued is anybody's guess. But that's not the issue. The issue is that she is not seeking an injunction to declare SORNA unconstitutional. She — this is — as she — the word she used was an as-applied challenge, as applied to her. So this is where you have some overlap between sovereign immunity principles and Article 3 standing, and — which has been raised, has been briefed — and Article 3 standing in this case. She can't just sue arbitrary defendants who might have some connection with enforcement of a statute. There has to be some connection to her when the injunction is specific as to her. So for example, if she was going to ask for some, you know, special I.D. that has to be printed by the Department of Public Safety, well then, you know, the Department of Public Safety would have — you know, there's got to be some connection here. And there's not with the state. She was arrested by the parish — or by the city of New Orleans, the Jefferson Parish. There's no connection here with the state. Sovereign immunity is immunity from suit, just like qualified immunity. It is immunity from trial. It is immunity from discovery, as I know you all had arguments earlier this week on that issue. Sovereign immunity provides those same protections to the state, the state officials who are being sued, because even though it is, you know, this fictitious official capacity personhood thing, they are still people who are going to get yanked out of their jobs as the top law enforcement officials in the state of Louisiana and subjected to discovery so that they can figure out what connection they have to her so that they can craft an injunction later. None of that is allowed. There has to be this legal connection. And she does have to have standing in order — and it's a redressability issue — standing to sue the people she's suing, whether they're actual people or they're fictitious people, as the case may be. So I think with that, you all must be ready for your weekend, unless you have any other questions. All right. Thank you. Thank you. The case is submitted, and we are adjourned.